UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TIMOTHY PATTON                                      CIVIL ACTION

VERSUS

JACOBS ENGINEERING GROUP
INC., ET AL.                              NO.: 15-00123-BAJ-RLB

RULING AND ORDER

Before the Court are motions for summary judgment filed by Talascend, LLC. ("Talascend") and Jacobs Engineering Group Inc. ("Jacobs") (collectively, Defendants), which seek dismissal of Timothy Patton's ("Plaintiff") claims against them pursuant to Federal Rule of Civil Procedure 56. (Docs. 71, 73). Plaintiff opposes Defendants' motions. (Docs. 97, 98). For the reasons that follow, Defendants' motions are **GRANTED**.

I.    **Factual Background**

As an overview, Plaintiff brings claims against Defendants arising from his employment as a contract employee at Jacobs, an assignment he obtained from Talascend, a staffing agency.[1] (Docs. 1-2, 66-1). Plaintiff's claims are all related to his severe stutter, which has been diagnosed as Childhood Onset Fluency Disorder.[2] (*Id.*). Defendants were aware that Plaintiff had a severe stutter during the period of employment at issue. (Doc. 71-8 at ¶ 6; Doc. 73-2

---

[1] Talascend furnishes temporary contract employees to clients, like Jacobs. (Doc. 71-8 at ¶¶ 2—3). These employees remain employed by Talascend and provide technical services to its clients. (*Id.*).

[2] There is no indication that either defendant was aware of this specific diagnosis.

at ¶ 42). Despite Plaintiff's stutter, the parties do not dispute that his work product was satisfactory while he was at Jacobs, although Plaintiff claims that he missed work or was late because of discrimination-related stress, which was noted by his supervisors at Jacobs. (Doc. 73-2 at ¶ 19; Doc. 98-1 at p.8 ¶ 32). Plaintiff claims that his stuttering is inextricably linked to anxiety, and that office noise and harassment that he complained of during his assignment with Jacobs exacerbated his condition. (Doc. 98-1 at p. 11 ¶ 53—54, p. 17 ¶ 42). Plaintiff further claims that discrimination-related stress ultimately led to a panic attack, which caused him to get into a car accident on February 28, 2014. (Doc. 66-1 at ¶ 15; Doc. 98-1 at p. 8 ¶ 34, pp. 11—12 ¶ 57). Upon learning that Plaintiff would be unable to return to work because of injuries he sustained in the accident, Jacobs took administrative action that, in Plaintiff's estimation, terminated his employment. (Doc. 73-2 at ¶ 26; Doc. 98-1 at p. 14 ¶ 26). A Jacobs supervisor notified Plaintiff, however, that he would try to find work for him once he was able to return to work. (Doc. 73-2 at ¶¶ 23—24).

Plaintiff has been an employee of Talascend since October 1, 2012,[3] (Doc. 71-8 at ¶ 7), and Talascend was aware of his severe stutter when he was hired, (*Id*. at ¶ 6). Plaintiff was provided with written copies of Talascend's anti-harassment policies. (*Id*. at ¶¶ 12—14). Sometime in October, 2012, Plaintiff was assigned to work at Jacob's facility in Baton Rouge, Louisiana to perform electrical design work. (*Id*. at ¶¶ 3, 15). As previously indicated, Plaintiff

---

[3] Following his car accident, Plaintiff has been on administrative leave with Talascend since March 1, 2014. (Doc. 71-8 at ¶ 7).

2

continued to work at Jacobs until he was injured in automobile accident on February 28, 2014. (*Id*. at ¶ 17).

While assigned at Jacobs, Plaintiff worked on three projects, and for each project he was assigned to a different floor. (*Id*.). Plaintiff worked on the eighth floor from October 1, 2012 though September 3, 2013, on the sixth floor from September 4, 2013 through February 3, 2014, and on the fifth floor from February 4, 2014 until he was injured in his automobile accident. (*Id*.; Doc. 97-1 at ¶ 17). The lead engineer on at least one of the projects Plaintiff worked on was Bruce Kistrup. (*Id*.). Greg Guillory was the department manager at Jacobs, and the lead engineers on each floor were employed by Jacobs and reported to him. (Doc. 71-8 at ¶ 19; Doc. 97-1 at ¶ 19).

Plaintiff alleges that shortly after he started his assignment at Jacobs, he began to complain about office noise that interfered with his ability to work. (Doc. 97-1 at ¶¶ 25, 26, 28; Doc. 98-1 at p. 4 ¶ 13). Defendants do not dispute that Plaintiff reported problems with office noise to various supervisors. (Doc. 71-8 at ¶¶ 40—51; Doc. 73-2 at ¶ 28). Plaintiff also alleges that he complained of routine work-place harassment in the form of employees at Jacobs calling him names and mocking his stuttering. (Doc. 97-1 at ¶¶ 25—26, 28; Doc. 98-1 at pp. 4—5 ¶ 13, 17). Throughout his assignment with Jacobs, Plaintiff asserts that he reported these complaints to Mr. Guillory, Mr. Kistrup, Emily Wimbley, the Talascend employee who recruited him, and Jennifer Zaden, a Talascend human resources manager. (*Id*.). Along with his complaints,

3

Plaintiff alleges that he requested to be moved to a quieter floor at Jacobs, or alternatively, into an office that would reduce his exposure to office noise. (Doc. 98-1 at p. 4 ¶ 13). Plaintiff also emailed Ms. Wimbley on December 10, 2012 to inquire if she could look for a new job for him because the noise in the office was "way too loud" but that he "[did] not want to confront the people [at Jacobs] about it."[4] (Doc. 71-8 at ¶ 40).

Despite reporting these complaints to his supervisors, Plaintiff alleges that no meaningful action was taken by Defendants apart from him being told to wear headphones or ear-plugs to mitigate the office noise he reported. (Doc. 71-8 at ¶¶ 46—47, 50, 52; Doc. 98 at p. 9). Plaintiff claims that this solution did not completely alleviate the noise problem, and as a result, his stuttering condition and anxiety worsened. (*Id.*). Plaintiff further alleges that Jacob's coworkers, and in one instance, Mr. Guillory, continued to harass him by mocking his disability and calling him names, which also worsened his condition. Although none of its employees participated in the harassment he has identified, Plaintiff claims that Talascend did not take any action with Jacobs to address the problem. (Doc. 97-1 at ¶ 20).

After his accident, Plaintiff filed an EEOC charge on May 7, 2014. (Doc. 71-7). Plaintiff amended his EEOC charge on September 30, 2014, wherein he attached a Talascend anti-harassment complaint form that was completed the

---

[4] Following this email, Plaintiff had several exchanges with Ms. Wimbley about office noise. (Doc. 71-8 at ¶¶ 45—47, 49—51). During these exchanges, Plaintiff was encouraged to contact supervisors at Jacobs to find a solution. (*Id.*). None of the emails linked Plaintiff's complaints of noise to his Child Onset Fluency Disorder. (*Id.*).

4

same day. (Doc. 71-7). Defendants assert, in effect, that it was not until after Plaintiff's car wreck that they became aware of the harassment Plaintiff has alleged in this lawsuit, which was filed on February 6, 2015. (Doc. 71-8 at ¶ 80; Doc. 73-2 at ¶¶ 38—39, 41, 48, 50).

## II.   Summary Judgment Standard

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal citations omitted). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied,* 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (internal quotations omitted). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer,* 455 F.2d 1236, 1241 (5th Cir. 1972).

## III.   Discussion.

Plaintiff's petition, as amended, asserts three identifiable claims that remain: (1) a failure to accommodate claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); (2) a hostile work environment claim under the ADA; and (3) a state law claim for intentional infliction of emotional distress.[5] The only disability Plaintiff identifies in his

---

[5] As a preliminary matter, Defendants do not address whether Childhood Onset Fluency Disorder qualifies as a disability within the meaning of the ADA. *See Taylor v. Principal Fin. Grp., Inc.,* 93 F.3d 155, 164 (5th Cir. 1996) (instructing that "[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather the effect of that impairment on the life of the individual"). The Court pretermits reaching a finding on this issue and proceeds, like Defendants, to address the merits of Plaintiff's claims. (*See* Doc. 73-1 at p. 6 n.7). Thus, for the purpose of this ruling, the Court assumes that Plaintiff's condition qualifies as a disability under the ADA. The Court cautions, however, that courts diverge over the classification of

6

complaint, as amended, is Child Onset Fluency Disorder. (Doc. 1-2 at ¶ 4; Doc. 66-1 at ¶ 4). The Court addresses each claim in turn.

### A. Failure to Accommodate Claim.

Plaintiff's failure to accommodate claim does not survive Defendants' motions for summary judgment for two reasons, as detailed below.

### 1. Exhaustion.

The ADA incorporates the same administrative perquisites as claims brought pursuant to Title VII. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788—89 (5th Cir. 1996). "[T]he filing of a charge of discrimination with the EEOC is a condition precedent to the bringing of a civil action under Title VII." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460 (5th Cir. 1970). The Fifth Circuit previously examined the Title VII exhaustion requirement in *Pacheco v. Mineta,* 448 F.3d 783 (5th Cir. 2006). In that case, the Fifth Circuit stated that:

> The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, "[a] less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." With that balance in mind, this court interprets what is properly embraced in review of a Title—VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC

_____

speech impediments as disabilities under the ADA. *See Andresen v. Fuddruckers, Inc.*, Civ. No. 03-3294 DWF/SRN, 2004 WL 2931346, at *6 (D. Minn. Dec. 14, 2004).

> investigation which "can reasonably be expected to grow out of
> the charge of discrimination." We engage in fact-intensive
> analysis of the statement given by the plaintiff in the
> administrative charge, and look slightly beyond its four corners,
> to its substance rather than its label.

*Id.* at 788–89 (internal citations omitted). The Fifth Circuit went on to instruct

that it does "not require that a Title—VII plaintiff check a certain box or recite

a specific incantation to exhaust his or her administrative remedies before the

proper agency." *Id.* at 792 (citing *Sanchez,* 431 F.2d at 463–65). Nor does it

"require, for purposes of exhaustion, that a plaintiff allege a prima face case

before the EEOC." *Id.* "Instead, the plaintiff's administrative charge will be

read somewhat broadly, in a fact-specific inquiry into what EEOC

investigations it can reasonably be expected to trigger." *Id.* "[A] judicial

complaint filed pursuant to Title VII 'may encompass any kind of

discrimination like or related to allegations contained in the charge and

growing out of such allegation during the pendency of the case before the

Commission.'" *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San

Antonio, Tex.,* 40 F.3d 698, 711 (5th Cir.1994) (quoting *Sanchez,* 431 F.2d at

466) (internal quotation marks omitted).

    Even under a broad reading, the EEOC charge submitted by Plaintiff,

as amended, could not reasonably have been expected to trigger an

investigation into Defendants' purported failure to accommodate the disability

he identified in his petition, Childhood Onset Fluency Disorder, or any other

disability for that matter. (*See* Doc. 71-7). The thrust of Plaintiff's EEOC

8

charge is that he was the victim of a hostile work environment. (*Id*.) Plaintiff's failure to accommodate claim, which is predicated on his purported sensitivity to office noise, does not "grow out" of his complaint of disability-based harassment. The Court therefore finds that Plaintiff did not adequately raise his failure to accommodate claim during the administrative review process. *See Hamar v. Ashland, Inc.*, 211 F. App'x 309, 310 (5th Cir. 2006) (finding that the scope of the plaintiff's EEOC charge was "too narrow" to have exhausted a claim for failure to accommodate, which is distinct from a claim for disparate treatment). For this reason, Defendants are entitled to summary judgment on Plaintiff's failure to accommodate claim.

2.   What did Defendants Know?

Alternatively, the Court finds that Plaintiff has failed to make a prima facie case for failure to accommodate under the ADA. Plaintiff was required to show that (1) he was a qualified individual with a disability; (2) the disability and its consequential limitations were known by Defendants; and (3) the Defendants failed to make a reasonable accommodation for such known limitations. *Neely v. PSEG Tex., L.P.*, 735 F.3d 242, 247 (5th Cir. 2013). "Under the ADA, to 'discriminate' includes 'not making reasonable accommodations to *the known* physical or mental *limitations* of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Griffin v. United Parcel Serv., Inc.*, 661 F.3d

216, 222 (5th Cir. 2011) (quoting 42 U.S.C. § 12112(b)(5)(A)) (emphasis added). An employee who needs an accommodation because of a disability must inform his employer of the limitations caused by his disability and suggest reasonable accommodations. *See E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (emphasis added) (finding that "[t]he employee must explain that the adjustment in working conditions or duties she is seeking is for a *medical condition-related reason*").

The Court finds that Plaintiff has not carried his burden of creating a genuine dispute of fact that Defendants knew or should have known that he had a workplace limitation as result of the disability he has identified. *See Griffin*, 661 F.3d at 224 (5th Cir. 2011) (quoting *Chevron,* 570 F.3d at 621) (emphasis added) ("This court has recognized that 'where the disability, *resulting limitations*, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . *to specifically identify the disability and resulting limitations*, and to suggest the reasonable accommodations.'"). Even if Plaintiff's stuttering condition was obvious, resulting limitations arising from it were not, as demonstrated by his satisfactory work performance. Rather than provide Defendants with information about his medical condition and explain, with particularity, how it limited his ability to work, the record reflects that Plaintiff complained, generally, of noise. Plaintiff has not created a genuine dispute of fact that he adequately linked office noise to an aggravation of his disability,

which in turn gave rise to a workplace limitation for which Defendants should have been aware.[6] *See id* at 224—225; *see also Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (distinguishing "between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability").

### B. Hostile Work Environment

Plaintiff properly exhausted administrative review of his hostile work environment claim. (*See* Doc. 71-7). To establish a prima facie case of disability-based harassment, Plaintiff must prove: (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment he complained of was based on his disability; (4) that the harassment he complained of affected a term, condition, or privilege of employment; and (5) that Defendants knew or should have known of the harassment and failed to take prompt, remedial action. *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). "Moreover, the disability-based harassment must 'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" *Id.* (quoting *McConathy, v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)). In determining whether a work environment is abusive, the Court must consider "the frequency of the discriminatory conduct, its severity,

---

[6] Plaintiff's complaints that office noise affected him "mentally and physically" and affected his "concentration" and "nerves" cannot be said to have put Defendants on notice of a work place limitation that was related to Child Onset Fluency Disorder. Patton Depo., Vol. 1, pp. 83:17—84:2; 229:24—230:7; 231:3—11.

whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999), *cert. denied*, 528 U.S. 963 (1999).

The Court finds that the summary judgment evidence relied upon by Plaintiff is insufficient to support a claim for disability-based harassment under the ADA.[7] Plaintiff testified, generally,[8] that Jacob's employees called him names, mocked his stuttering, and intentionally directed noise at him. However, he identified only a few specific instances of harassment related to his disability that do not rise to the high level set forth by the Fifth Circuit for conduct sufficiently severe or pervasive to alter the terms or conditions of employment.[9] *Flowers*, 247 F.3d at 235; *see also Medvic v. Compass Sign Co., LLC*, Civ. No. 10-5222, 2011 WL 3513499, at *11 (E.D. Pa. Aug. 10, 2011) (no actionable harassment where the plaintiff asserted that his supervisor and coworkers repeatedly mocked his stutter); *Colon v. Frito Lay Quaker Puerto Rico*, Civ. No. 06-2131 (JAG), 2009 WL 5892997 (D. Puerto Rico Oct. 13, 2009)

---

[7] Noise endemic of a normal office environment cannot support Plaintiff's hostile work environment claim, as such noise was not directed at him "based on his disability." *Flowers*, 247 F.3d at 235.

[8] While Plaintiff's generalized allegations speak to the frequency of the harassment he alleges he experienced, it does little to describe its severity. *See Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 258 (5th Cir. 2011)

[9] Plaintiff also had great difficulty identifying the sources of the harassment he testified he experienced. Furthermore, Plaintiff does not address Defendants' assertion that his harassment claims lack corroboration. *See Barkley*, 433 F. App'x at 258 (instructing that a plaintiff's own testimony may not be sufficient to create a genuine dispute of fact when it contains only vague and generalized allegations of harassment).

12

(instances that were not physically threatening or humiliating and amounted to nothing more than offensive utterances in regards to plaintiff's speech impediment did not constitute harassment under the ADA). In reaching this conclusion, the Court does not doubt that Plaintiff found the specific instances of teasing he identified to be offensive, and it agrees that such conduct was insensitive and rude. It is well established, however, that offensive utterances do not give rise to actionable harassment. *Shepherd*, 168 F.3d at 874.

"Moreover, in association with the employer's failure to take remedial action once being made aware of harassment, the court also considers the employee's concomitant duty to reasonably take advantage of corrective opportunities provided by the employer." *King v. Sanderson Farms, Inc.*, Civ. No. H-11-4488, 2014 WL 1315562 at *11 (S.D. Tex. Mar. 31, 2014) (citing *Hockman v. Westward Commc'ns, L.L.C.*, 407 F.3d 317, 329 (5th Cir. 2004); *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 300 n.3 (5th Cir. 2001)). Although Plaintiff asserts that he complained of harassment to supervisors at both Patton and Talascend on several occasions, he nonetheless unreasonably failed to avail himself of the procedures set forth in the anti-harassment policies[10] maintained by both defendants. *See id*. Specifically, Plaintiff asserts

---

[10] Plaintiff received a form from Talascend that provided, in pertinent part: "Special Rule: Harassment and/or Discrimination Complaints. An employee who believes that he/she has or is experiencing harassment and/or discrimination must contact a member of the Human Resources Department immediately. You may do so by contacting the Employee Service Center or any member of Human resources . . . ." (Doc. 72-2 at pp. 355, 357—358). Jacobs also maintained anti-harassment policies known to Plaintiff that directed employees to contact a local or corporate human resources representative to report harassment. (Doc. 73-2 at p. 6 ¶ 37; Doc. 73-11).

that he called Talascend's human resources department *one* time during the nearly eighteen month period he was assigned to Jacobs, and that he left a voicemail but was never contacted.[11] Patton Depo., Vol. 1, p. 83:4—13. There is no indication that Plaintiff followed up or called again. This meager effort, along with Plaintiff's failure to report harassment further up the chain of management with either defendant, is fatal to his hostile work environment claim.[12] *King*, 2014 WL 1315562 at *11.

### C. Intentional Infliction of Emotional Distress

To assert a claim for intentional infliction of emotional distress under Louisiana law, "a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991). Moreover, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of

---

[11] Furthermore, when asked if he contacted Ms. Zaden about problems he was experiencing at Jacobs, Plaintiff testified, "I was dealing with Emily Wimbley because she was the one that hired me." Patton Depo., Vol. 1, p. 64:1—17. When asked if he understood that he could contact Ms. Zaden, Plaintiff responded "I understand, but why contact more than one person. . . I needed help and I talked to Emily." *Id*. at 64:18—25. Plaintiff later stated that he did not know if he ever contacted Ms. Zaden about problems he was facing at Jacobs. *Id*. at 65:1—8.

[12] This conclusion is buttressed by the fact that Ms. Wimbley offered to help Plaintiff contact Talascend's human resources department, and later directed him to do so after providing him with the appropriate telephone number. (Doc. 71-8 at ¶ 54, 61).

14

rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.* at 1209.

The Court finds that Plaintiff has not identified specific conduct sufficient to support a claim for intentional infliction of emotional distress. *See Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1144 (5th Cir. 1991) (instructing that work place discrimination and harassment rises to the level of intentional infliction of emotional distress only in the "most unusual cases" and is not often the "sort of conduct, as deplorable as it may sometimes be, that constitutes extreme and outrageous conduct") (internal quotations omitted). Furthermore, Plaintiff has not identified facts which would permit the Court to find that coworkers at Jacobs intended to inflict severe emotion distress upon him or were substantially certain that severe emotional distress would flow from their conduct.[13]

## IV.   Conclusion

Plaintiff did not properly exhaust his ADA failure to accommodate claim. And even if he had, Plaintiff failed to create a genuine dispute of fact that he adequately identified workplace limitations that were linked to his Child Onset Fluency Disorder. To the extent Plaintiff did in fact complain of verbal harassment and taunting, as opposed to office noise, he failed to identify

---

[13] Plaintiff has not alleged that any *Talascend* employee intentionally inflicted emotional distress upon him. And Plaintiff has alleged only one specific incident regarding Mr. Guillory. (*See* Doc. 91-3 at ¶ 45). Assuming that Mr. Guillory did in fact mock Plaintiff, this *one* act does not give rise to a claim for intentional infliction of emotional distress. *See White*, 585 So.2d at 1210—11.

specific instances of harassment that, taken together, rise to the level of severe and pervasive harassment required to state a hostile work environment claim under the ADA. For largely this same reason, Plaintiff did not create a genuine dispute of fact that would allow him to succeed on his claim for intentional infliction of emotional distress. Lastly, Plaintiff did not reasonably take advantage of the anti-harassment policies maintained by both Defendants.

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motions (Docs. 71, 73) are hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that motions pending at Docs. 100, 99, 85, 78, 67, 57, and 52 are hereby **DENIED AS MOOT**.

Baton Rouge, Louisiana, this 24th day of June, 2016.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

16